**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                  Plaintiff,<br><br>v.<br><br>Today.com Incorporated, et al.,<br><br>                  Defendants. | No. CV-15-00086-PHX-DGC<br><br>**ORDER** |

Plaintiff United States of America moves for summary judgment against Defendant Nathan Gwilliam's counterclaims for breach of contract and unjust enrichment. Doc. 52. The motion has been fully briefed (Docs. 60, 61) and no party has requested oral argument. The Court will grant the government's motion.

**I.      Background.**

Nathan Gwilliam acted as President, CEO and Chairman of the Board of Directors of Today.com from the time it was formed in February 1998. Doc. 13 at 3. In September 2011, the government filed a complaint against Gwilliam in the District of Utah alleging that he was liable for federal income and FICA taxes that Today.com failed to pay. Doc. 14-2. The only federal tax assessment at issue in the Utah case was made under 26 U.S.C. § 6672. Doc. 61, ¶ 2. The Utah court granted Gwilliam's motion to dismiss based on the statute of limitations set forth in 26 U.S.C. § 6502(a). Doc. 60 at 2. The court awarded Gwilliam $10,086 in attorneys' fees and $315 in costs and expenses (Doc. 52-1), and the government appealed the dismissal to the Tenth Circuit.

On August 23, 2012, while the appeal was pending, Gwilliam's lawyer made a settlement offer to the government. The offer stated, in relevant part: "As settlement of this matter, my client offers to waive his attorney's fees in exchange for dismissal of the appeal." Doc. 55-1. The government responded to the offer on August 24, 2012, stating: "We interpret your offer to be as follows: in exchange for the Government dismissing its appeal, your client will waive the judgment for attorneys' fees he obtained from the District Court. If accepted, your offer will result in the filing of a dismissal of this appeal with prejudice." Doc. 55-3. On August 31, 2012, the government accepted Gwilliam's offer and the appeal was dismissed. Doc. 55-5.

In January 2015, the government filed this case. The First Amended Complaint alleges that Today.com failed to pay-over to the IRS federal employment taxes it had withheld from employees during the quarters ending December 31, 1998, March 31, 1999, and June 30, 1999, and also failed to pay the employer's share of FICA taxes for these same quarters. Doc. 13, ¶ 51. Today.com also allegedly failed to pay federal unemployment taxes for the year ending December 31, 1998. Count one is asserted solely against Today.com and seeks a judgment for tax liabilities and penalties totaling $288,149.48. *Id.* Count two alleges that sale of certain of Today.com's assets to Gwilliam and his father constituted a fraudulent transfer, and seeks to avoid the transfer or attach other assets of Gwilliam. *Id.*, ¶ 71. Count three alleges that the sale violated the trust fund doctrine, and seeks to hold Gwilliam liable. *Id.*, ¶ 75. Count four alleges that Gwilliam has successor liability for the tax obligations of Today.com. *Id.*, ¶¶ 80-81. None of the claims is based on 26 U.S.C. § 6672 – the statute at issue in the Utah case.

Gwilliam argues that even though the present matter has a separate legal basis, the factual basis is the same because the government seeks to hold him personally liable for Today.com's tax obligations. Doc. 60. He claims that his personal liability for Today.com's tax obligations "was the subject of the settlement agreement in 2012," and that the government has breached the agreement by bringing this action. *Id.* at 4. Gwilliam also claims that the government has been unjustly enriched by the settlement

agreement. Doc. 37 at 15.

## II. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment – the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Analysis.

### A. Breach of Contract.

Courts construe settlement agreements as contracts. *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 733 (9th Cir. 1986). When the United States is a party to a contract, "[f]ederal law controls the interpretation of [the] contract." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). Courts "will not look to extrinsic evidence to determine the[] meaning" of contractual terms when the terms "on their face have a clear and unambiguous meaning." *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000).

The government correctly asserts that the language of the offer and acceptance letters is unambiguous. Gwilliam offered a straightforward *quid pro quo* – he would waive the judgment of attorneys' fees in exchange for the government's dismissal of its appeal. The offer did not discuss any other tax liabilities of Gwilliam or Today.com.

The agreement was limited to the Utah case. As the government argues, Gwilliam could have addressed future exposure to tax liabilities by adding language to the offer letter, but he did not.

Gwilliam contends that the settlement agreement contained "implied terms" that "the Government had waived and would not assert further claims against [him] for the tax obligations of Today.com." Doc. 60 at 7. He argues that *Sacramento Navigation Co. v. Salz*, 273 U.S. 326, 329 (1927), supports this proposition by holding that "implied [contractual] provisions . . . indispensable to effectuate the intention of the parties" are included in the contract. But the "indispensable" terms of this settlement related entirely to the tax assessment in the Utah case, not to future tax assessments that were not at issue in the case and never mentioned in the settlement offer or acceptance. If Gwilliam wanted to settle his exposure to future assessments, he could have expressed this in the offer. *See Verson Corp. v. Verson Int'l Grp. PLC*, 899 F. Supp. 358, 361 (N.D. Ill. 1995) ("In settlements, as in all contracts, every effort should be made to give force to the words employed by the parties and not imply words that the parties could have used but did not.").

Gwilliam's own authorities undercut his position. He cites *Lippman v. Sears Roebuck & Co.*, 280 P.2d 775 (Cal. 1995), for the proposition that implied covenants "must arise from the language used" in the contract, and that "it must appear from the language used that [the implied covenant] was so clearly within the contemplation of the parties that they deemed it unnecessary to express it." Doc. 60 at 7, quoting *Lippman*, 280 P.2d at 779. The language used in this case concerns nothing other than dismissal of the appeal in exchange for dropping the judgment for attorneys' fees and costs. The parties' communications contain not a word about other claims under other legal theories or a release of all claims the government might have against Gwilliam. The Court therefore cannot conclude that "the language used" by the parties shows that they intended a much broader and more comprehensive settlement. Indeed, Gwilliam admits

that he "did not seek language dealing with claims not yet asserted or threatened." Doc. 60 at 9.[1]

Because the offer and acceptance said nothing about other tax liabilities, the Court concludes that the settlement was limited to liabilities at issue in the Utah action. The government has not breached the settlement agreement by filing this action.

**B. Unjust Enrichment.**

Gwilliam makes no response to the government's motion for summary judgment on his unjust enrichment claim. Doc. 60. Because Gwilliam has abandoned his unjust enrichment claim, the Court will grant summary judgment.

The Court will also grant summary judgment because a claim for unjust enrichment "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *see also Cent. Ariz. Water Conservation Dist. v. United States*, 32 F. Supp. 2d 1117, 1140 (D. Ariz. 1998). Here, the parties entered into an enforceable, binding agreement.

Finally, Gwilliam argues that the government has been unjustly enriched because it did not have to pay the attorneys' fees awarded to him by the Utah court. Doc. 37 at 15. But that benefit would be unjust only if the government did not provide Gwilliam with a commensurate benefit in exchange. In fact, Gwilliam received precisely what he asked for in exchange – dismissal of the government's appeal and elimination of the need to spend time and money opposing that appeal. Given this plain benefit to Gwilliam, the Court cannot conclude that the government was unjustly enriched by the waiver of its obligation to pay $10,401 in fees and costs.

---

[1] Gwilliam suggests that the Utah court's decision that the government's claim is time-barred should apply in this case as well, but that is a matter of *res judicata* or collateral estoppel, not implied contract or unjust enrichment. Gwilliam also argues that the government agreed in the settlement that all of its claims against him were time-barred, but the settlement documents contain no such language. Finally, Gwilliam argues "that the implied covenant would have been made if attention had been called to it" (Doc. 60 at 9), but Gwilliam was represented by counsel in the settlement. The government had no duty to suggest that he insist on a broader settlement.

**IT IS ORDERED** that the motion for summary judgment on Defendant Nathan Gwilliam's counterclaims for breach of contract and unjust enrichment (Doc. 52) is **granted**.

Dated this 24th day of February, 2016.

_____
David G. Campbell
United States District Judge